O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| VINCENT ROMERO VEGA,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. ED CV 14-1405-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Vincent Romero Vega ("Plaintiff") appeals the denial of his application for Social Security disability benefits. The Court concludes that the Administrative Law Judge ("ALJ") did not provide clear and convincing reasons adequately supported by substantial evidence for rejecting Plaintiff's testimony. The ALJ's decision is therefore reversed and the matter is remanded for award of benefits consistent with this opinion.

## I.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for supplemental security income on January 18, 2013, alleging that he became disabled on August 10, 2012.

Administrative Record ("AR") 134. After a hearing on January 22, 2014, the ALJ found that Plaintiff had severe impairments of status post resection colon cancer, stage II and Lynch syndrome. AR 15, 17. After finding that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with some additional physical limitations, the ALJ concluded that Plaintiff was not disabled because there was work available in significant numbers in the national and regional economies that he could perform. AR 17-20.

## II.
## ISSUES PRESENTED

The parties dispute whether the ALJ provided clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's subjective symptom testimony. See Joint Stipulation ("JS") at 4.

## III.
## DISCUSSION

**A.  Background**

Plaintiff first sought emergency room treatment for abdominal pain and vomiting on December 24, 2012. See AR 281-82. Plaintiff stated that he had been having ongoing abdominal pain for three months. Id. He was given a diagnosis of constipation. AR 288-89. Plaintiff returned to the ER on January 4, 2013 with the same complaints and was subsequently admitted to the hospital. See AR 207, 221. A colonoscopy performed the next day found a cancerous mass. AR 234, 236-37, 267-68. Plaintiff was transferred to another hospital on January 11, 2013, and then discharged two days later to seek surgical consultation. AR 280, 382.  Plaintiff sought medical care for his condition several times in subsequent weeks. AR 363, 365, 384, 399, 427. On February 13, 2013, Plaintiff underwent a total proctocolectomy with ileoanal J-pouch, takedown of splenic flexure, diverting loop ileostomy creation, and flexible sigmoidoscopy. AR 402. Plaintiff was discharged on February 18,

2013, and then readmitted for three days on March 2, 2013, with complications to his ileostomy site and "high ileostomy liquid output." AR 408, 410-412. Plaintiff was then admitted to the hospital for three days on May 8, 2013 for a successful takedown of his diverting loop ileostomy. AR 386.

Upon discharge on May 10, 2013, Plaintiff was instructed to call the hospital if he "continue[d] to have an excessive amount of bowel movements." AR 388. On May 11, 2013, Plaintiff was re-admitted to the hospital "overall doing well" but with abdominal pain and possible partial bowel obstruction after taking too much Imodium. AR 390-91. He was discharged on May 14, 2013, "[o]nce his bowel function was under control," with instructions the he engage in no heavy lifting or strenuous activity for four weeks. AR 392. On May 17, 2013, Plaintiff was "do[ing] quite well," having only three bowel movements per day and continuing on Imodium as needed for loose bowel movements. AR 397. On May 25, 2013 Plaintiff complained to medical staff of rectal irritation lasting two weeks as a result of "expectant diarrhea/loose stool." AR 448. On May 30, 2013, Plaintiff sought medical attention for diarrhea suffered since his takedown surgery. AR 441. On June 11, 2013, Plaintiff complained of diarrhea to medical staff and was told to continue on Imodium. AR 440. On June 13, 2013, Plaintiff was "healing well," but also reported constant, ongoing diarrhea. AR 439.[1] On July 9, 2013, Plaintiff was seen by medical staff and was "doing very well," but had "not noticed any change in his bowel movements." AR 453. He was told to follow up in three months or sooner if he developed any new symptoms. Id.

On November 6, 2013, Plaintiff saw his physician, Dr. Chung, for the

---

[1] Additionally, on September 9, 2013, Plaintiff filled out a disability report noting that he had been to the hospital seeking treatment for his diarrhea in June of 2013. See AR 193.

3

follow up appointment, who noted that Plaintiff's "main complaint has been the diarrhea." AR 455. Plaintiff reported "bowel movements 15-16 times per day," while "trying to take Imodium 4-5 tablets per day, but it [was] not controlling [the] diarrhea."[2] Id. Plaintiff claimed to be eating eight to nine large meals per day at that time, but also that he did not notice any significant difference in bowel movements depending on his food intake. Id. Dr. Chung stated that the "diarrhea" was "related to" Plaintiff's "surgical resection." Id. Plaintiff was advised to increase his fiber intake beyond the vegetables he was already consuming and to avoid fatty or greasy foods beyond his current practice of not eating much fried food. AR 455-56.

On May 8, 2013, a consulting physician opined, based on medical records obtained through March of 2013, that Plaintiff could tolerate an RFC of light work, with the limitation that Plaintiff "will require proximity to bathroom facilities due to ileostomy." AR 48-53. On August 7, 2013, a different consulting physician concurred with the first consulting physician, based on medical records obtained through July 19, 2013, assigning Plaintiff a light RFC with the same limitation describing proximity to a bathroom. AR 58-64.

At his January 2014 hearing before the ALJ, Plaintiff testified that his bowel movements kept him from working. AR 33. Plaintiff stated that he "use[d] the restroom about 15 times a day" with "frequent diarrhea," and that his typical restroom usage could last up to twenty minutes each time. AR 34, 36-37. He also testified that he had been employed as a framer for about two weeks in October 2013, but his ability was not what his employer expected since he was "constantly going to the restroom," and he was subsequently laid

---

[2] Plaintiff also noted on October 29, 2013 that he was taking Lomedium for diarrhea. AR 200.

off. AR 31, 34-35.

A vocational expert ("VE") testified at the hearing that there were a significant number of jobs available in the national economy for a person with the Plaintiff's RFC of medium work. See AR 42-43. Under a second hypothetical with an RFC of medium work, but also a limitation of the worker missing three or more days per month due to various impairments, the VE testified that there were not any jobs in the national economy. Id. Under a third hypothetical with an RFC of medium work, but also a limitation of the worker taking two to five unscheduled twenty minute breaks per day, the VE testified that there were not any jobs in the national economy. Id. AR 44.

In his written opinion on February 7, 2014, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with" the ALJ's RFC determination. AR at 18. Here, the ALJ found that the Plaintiff met the first step of the two-part credibility determination, and also found no affirmative evidence of malingering. The ALJ went on to identify evidence which he saw as undermining Plaintiff's credibility regarding his symptom testimony.

> The claimant's examination findings do not establish the degree of limitations alleged in these proceedings . . . . On January 25, 2013, the Plaintiff reported he felt well, had no abdominal pain, tolerated a regular diet and had regular bowel movements . . . . [¶] The claimant testified that since removing his colon, it takes him longer to use the restroom because his bowel movements no longer occur all at once. The claimant has not reported having to use the restroom for 20 minutes at one time to his treatment providers . . . . In the claimant's May 17, 2013 examination he

5

> reported he felt well, had no abdominal pain, no nausea or vomiting. He reported having only 3 bowel movements a day which were easily controlled. He reported tolerating a regular diet and overall feeling well. The claimant was not opined to have any work restrictions. He did not report having any limitations in his activities of daily living, including the frequency and extended duration of bathroom usage he testified to. These admissions are inconsistent with his testimony. On July 9, 2013, the claimant was reported to clinically be doing very well. He was eating well. He had not noticed any abdominal pain or any change in his bowel movements.
>
> On November 6, 2013, the claimant reported eating a lot of food, eating 8-9 large meals per day. He had bowel movements 15-16 times per day. The claimant was encouraged to increase his fiber intake and was prescribed Lomotil. The claimant did not report having that frequency of bathroom usage when he was eating normal meals, only when he was eating 8-9 large meals a day. The undersigned finds that the claimant's medical records do not establish a need for unscheduled breaks because his treatment providers have not opined such breaks would be needed and his longitudinal records do not establish the frequency or duration of bathroom usage alleged in these proceedings.

AR 18-19 (citations omitted).

The ALJ also gave the consulting physicians' opinions limited weight because "they consider the Plaintiff's condition with chemotherapy, which Plaintiff has not undergone." AR 19. The ALJ found Plaintiff able to "perform medium work" because "[h]is treatment providers have not found him to have greater restrictions." Id.

6

B. **Applicable Law**

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter, 504 F.3d at 1035-36). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036. Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged symptoms are reasonably consistent with the objective medical evidence and other evidence, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (explaining 20 C.F.R. § 416.929(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins, 466 F.3d at 883. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)), The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 & n.8 (9th Cir. 1996).

///

C. <u>Analysis</u>

The ALJ relied almost entirely on the medical record to discount Plaintiff's symptom testimony. A lack of objective medical support may be a legally sufficient reason to discount a claimant's subjective symptom testimony, but the ALJ must specifically explain how the evidence undermines the testimony. See <u>Parra v. Astrue</u>, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying 'what testimony is not credible and what evidence undermines the claimant's complaints.'") (quoting <u>Lester</u>, 81 F.3d at 834). For the reasons set forth below, the Court finds that the ALJ's reasons for discounting Plaintiff's symptom testimony are not clear and convincing.

First, the ALJ noted that "[t]he Plaintiff was not observed to have any difficulties in his January 2013 interview with the field office representative." AR 18. This field office report was conducted on January 18, 2013, before Plaintiff's total proctolectomy. Since Plaintiff did not complain of diarrhea until after his surgery in May of 2013, this observation bears little if any relevance to Plaintiff's diarrhea claims.

Second, the ALJ noted the Plaintiff "testified that he uses the restroom 15 times a day and has frequent diarrhea. This has been going on since his reversal in May . . . . He testified that he can spend up to 20 minutes each usage. The claimant has not reported this to his treatment providers." AR 18. The ALJ then concluded that Plaintiff's "longitudinal records do not establish the frequency or duration of bathroom usage alleged." AR 19. This conclusion is difficult to reconcile with the substantial evidence in the medical record supporting Plaintiff's claims of diarrhea. See <u>Ramirez v. Colvin</u>, No. 12-5308, 2013 WL 1752453, at *5 (C.D. Cal. Apr. 22, 2013) ("Also militating against finding that the ALJ's first reason was a legally sufficient reason is the ALJ's

failure to discuss significant and probative evidence that supported plaintiff's subjective symptom testimony."). Although the ALJ references Plaintiff's May 17, 2013 examination, where the doctor reported Plaintiff having three easily controlled bowel movements per day, the ALJ ignores Plaintiff's May 25, 2013 complaint of "expectant diarrhea/loose stool" for the previous two weeks; Plaintiff's May 30, 2013 complaint of diarrhea since the takedown surgery; Plaintiff's June 11, 2013 complaint of ongoing diarrhea; and Plaintiff's June 13, 2013 complaint of ongoing diarrhea. See AR 448, 441, 440, 439. The ALJ's failure to acknowledge these consistent complaints also undermines his apparent conclusion that Plaintiff's report on July 9, 2013 that he had not noticed any change in his bowel movements meant he was not having diarrhea, given that this exam directly followed four consecutive visits to the doctor with complaints of diarrhea. See AR 453. Finally, the ALJ cites to Plaintiff's November 6, 2013 exam to support his proposition that Plaintiff's high number of bowel movements was solely a result of his large intake of food. AR 19. The ALJ fails to note that during this visit, Plaintiff also stated that he saw no change in his bowel movements as a result of changing his food intake. AR 455. The ALJ also fails to address the report of diarrhea during this exam, where Dr. Chung stated that Plaintiff's ongoing diarrhea was related to his surgical resection. Id. The ALJ may not make an adverse credibility determination by cherry-picking from the record. See Reddick, 157 F.3d at 722 (reversing ALJ's adverse credibility determination where it was "not entirely accurate" with regard to the record).

     Third, the ALJ stated that Plaintiff's failure to report to his medical professionals "any limitations in his activities of daily living, including the frequency and extended duration of bathroom usage he testified to," was "inconsistent with [Plaintiff's] testimony." AR 19. The ALJ is entitled to consider inconsistent statements when assessing a claimant's credibility. See

Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). However, the ALJ failed to cite any specific clinical evidence contradicting Plaintiff's testimony; the ALJ merely points to the absence of information in the record. See Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999) (ALJ's finding that claimant's testimony was "inconsistent with clinical observations" was not clear and convincing reason because the ALJ "failed to specify what complaints [were] contradicted by what clinical observations"). The Court finds no such inconsistency for the reasons stated above.

Finally, the ALJ also found Plaintiff to be not fully credible because the "his treatment providers have not opined such [bathroom] breaks would be needed." AR 19. However, there is no opinion of a treating physician in the record. To the extent that the ALJ thought the opinion of a treating physician was necessary, the ALJ has the affirmative duty to fully develop the record. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The ALJ's duty exists whether or not plaintiff is represented by counsel. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ did not state that he needed a treating physician's opinion either at the hearing or in his decision. Therefore, the absence of a treating physician's opinion about Plaintiff's need for bathroom breaks cannot undermine Plaintiff's credibility.

Because the ALJ failed to provide clear and convincing reasons undermining Plaintiff's subjective symptom testimony, and the record provides substantial evidence consistent with Plaintiff's testimony that he suffered from diarrhea from May 2013 until January 2014, the Court finds that the ALJ's finding to the contrary was legal error. See Quinnin v. Colvin, No. 12-01133, 2013 WL 3333026 (D. Ore. July 1, 2013) at *4-5 (finding that the ALJ improperly failed to credit plaintiff's testimony that his sigmoid colectomy

created a need to frequently use the restroom for an extended period of time, resulting in the need to take up to three 30 to 60 minute breaks per day)

**D.     A Remand for Award of Benefits Is Appropriate**

Where, as here, the Court finds that the ALJ improperly discredited Plaintiff's testimony, the Court has discretion as to whether to remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate under the so-called "credit-as-true" rule to exercise this discretion to direct an immediate award of benefits. Id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").

Under this credit-as-true framework, the Court must apply the following three-part standard, each part of which must be satisfied before the Court remands to the ALJ with instructions to award benefits: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison v. Colvin, 795 F.3d 995, 1020 (9th Cir. 2014).

The ALJ found Plaintiff to have an RFC of medium work. The ALJ failed to account for Plaintiff's need to be near a restroom in the RFC. See Jackson v. Colvin, No. 12-01323, 2013 WL 5288108, at *12 (D.S.C. Sept. 16, 2013) (noting that the ALJ "accounted for the claimant's reported chronic diarrhea in the above residual functional capacity by requiring he have close access to a restroom"). The VE testified that there were no jobs in the economy for a worker with Plaintiff's RFC taking two to five unscheduled twenty

minute breaks per day. If the Plaintiff's testimony is credited as true, he would need that many breaks per workday due to diarrhea post-takedown, and would not be employable. See Quinnin, 2013 WL 3333026, at *5 ("This testimony, credited as true, falls squarely within the types of excessive breaks that the VE testified would render a claimant unemployable."). Therefore, the Court concludes that a remand for award of benefits is appropriate.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for award of benefits consistent with this opinion.

Dated: May 08, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge